Filed 9/8/25  P. v. Nero CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>BENNIE TRIMALE NERO,<br><br>Defendant and Appellant. | B337211<br><br>(Los Angeles County<br>Super. Ct. No. BA310575) |

APPEAL from an order of the Superior Court of Los Angeles County, Alison S. Matsumoto, Judge.  Affirmed.

Gloria C. Cohen, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Kathy S. Pomerantz, Deputy Attorneys General, for Plaintiff and Respondent.

In 2007, a jury found Bennie Trimale Nero guilty of second degree murder and found true that he personally used a knife in committing the offense. Nero had testified at trial that he stabbed the victim, but he contended he acted in self-defense or in defense of his sister, Lisa Brown. Brown was a codefendant in the case. In 2022, Nero petitioned for resentencing under Penal Code section 1172.6.[1] The trial court denied the petition at the prima facie stage after concluding Nero was the actual killer. We conclude Nero is not eligible for section 1172.6 relief as a matter of law. The record of conviction conclusively establishes he was not convicted on an imputed malice theory. We affirm the trial court's denial of his petition.

**FACTUAL AND PROCEDURAL BACKGROUND**

*Underlying Crime*

Based on our review of the trial transcripts, we find the background stated in the opinion affirming Nero's conviction to be an accurate summary of the evidence at trial.[2] (See *People v.*

---

[1] All further undesignated statutory references are to the Penal Code.

Effective June 30, 2022, section 1170.95 was renumbered to section 1172.6 with no change in text. (Stats. 2022, ch. 58, § 10.) We refer to the law as section 1172.6 for the remainder of this opinion.

[2] On May 12, 2025, we granted the People's request for judicial notice of the clerk's and reporter's transcripts from Nero's trial. Nero argues in his reply that we cannot rely on trial transcripts at the prima facie stage, but concedes that it may be appropriate to rely on the clerk's transcript, trial court minutes,

*Lewis* (2021) 11 Cal.5th 952, 972 (*Lewis*) [appellate opinion generally part of record of conviction as applied to § 1172.6 proceedings].)  We therefore quote its description of the trial evidence, which is in the published portion of the opinion.  (*People v. Nero* (2010) 181 Cal.App.4th 504 (*Nero*).)  We provide these facts only "for background purposes and to provide context for the parties' arguments."  (*People v. Flores* (2022) 76 Cal.App.5th 974, 978, fn. 2, disapproved on another ground in *People v. Patton* (2025) 17 Cal.5th 549, 569 (*Patton*).)

"A.    *The prosecution's case-in-chief.*

"On September 27, 2006, Milton Yates was found stabbed to death in a parking lot fronting a laundromat and a market.  Videos from the laundromat's and market's surveillance cameras showed Yates riding a bicycle in the parking lot.  [Fn. omitted.]  Nero and Brown came out of the market.  Brown got into a car, but Nero remained outside, urinating.  Yates rode his bicycle around the car, and Nero walked to him.  Brown got out of the car and, after watching the two men, walked to them.  Yates and Nero fought.  At one point, Nero grabbed the back of his pants and bent near the back of his car.  Nero stabbed Yates with a knife four times.  Autopsy results showed that Yates ingested cocaine and ethyl alcohol within hours of his death.

"Detective Sunny Romero examined Yates's bicycle, but he did not find it possessed any evidentiary value.  A photograph of

---

jury instructions, verdict form, appellate opinion, closing arguments, and information.  (See *People v. Beaudreaux* (2024) 100 Cal.App.5th 1227, 1232–1233 [record of conviction consisted of clerk's transcript, trial court minutes, jury instructions, verdicts from underlying proceedings, and prior appellate opinion].)

3

the bicycle, however, shows a black object bound to the bicycle's frame where a water bottle would normally be attached.

"B.    *The defense case.*

"Nero testified.  [Fn. omitted.]  Brown is his older sister and has been his legal guardian since their mother passed away when he was 13.  Around 2003 or 2004, Nero was convicted of grand theft and of driving a vehicle without the owner's consent.  As a result, he went to prison, where he developed a fear of knives.  In 2004, he was shot and hospitalized for two to three weeks.

"On the afternoon of September 26, 2006, Nero ran into Yates.  Nero had never seen Yates in the neighborhood, but Nero asked him for a quarter to buy a cigarette.  Later that night, Nero and Brown went to the liquor store to buy beer.  Nero went inside the store, and when he came out, he urinated, and Brown got into their car.  Yates approached Brown, who is a lesbian, and called her a 'bull dyke' and 'bitch.'  Yates made other comments and hand gestures by moving his hands back and forth.  He went to the driver's side of the car and threatened Nero.  He challenged Nero to a fight, saying ' "bring it on." '  Nero approached Yates, and Yates hit him.  Yates did not appear to be sober.

" 'Green Eyes' pulled up in a car.  Nero asked Green Eyes what he would do if someone disrespected his sister.  Green Eyes said it depended on the situation.  Green Eyes left, and Yates and Nero resumed fighting.  When Nero knelt by the back of his car, he was merely pretending to get a weapon.  And when he grabbed the back of his pants, he was merely pulling them up because they were baggy.  Yates got a weapon from his bicycle and stabbed Nero's arm, creating a scar that was visible at trial.  Struggling over the weapon, the two men fell.  Yates dropped the knife.  [Fn. omitted.]  Nero picked it up and stabbed Yates, but

4

he did not intend to kill Yates.  Nero dropped the knife.

"Throughout the altercation between Nero and Yates, Brown was telling them to stop.  She never told her brother to fight Yates or encouraged him in any way, and she did not hand him a knife.  In his later statement to the police, Nero maintained he acted in self-defense and that his sister told him to stop.

"C.    *Rebuttal case.*

"Detective Salaam Abdul examined Yates's bicycle, which was never booked into evidence but was instead released to the victim's son.  At trial, he could not recall what the black item on the bike was, but he believed it was 'some balled up like plastic that looked like it was crunched together.'  He did not find anything on the bike having, in his opinion, evidentiary value." (*Nero*, *supra*, 181 Cal.App.4th at pp. 507–509.)

### Trial, Verdict, and Sentencing

The People charged Nero with first degree murder (§ 187, subd. (a)) and alleged he had personally used a knife in the commission of the offense (§ 12022, subd. (b)(1)).  The information also charged Brown with first degree murder (§ 187, subd. (a)).

In 2007, the People jointly tried Nero and Brown before a jury.  In closing argument, the prosecutor argued Nero stabbed Yates and Brown aided and abetted Nero by handing him the knife.  The prosecutor relied on Nero's testimony and the video evidence.  Nero's counsel argued Nero stabbed Yates in self-defense and because he was standing up for his sister.  Nero's counsel told the jury, "He admits stabbing him.  But stabbing, just stabbing a person and killing him doesn't add up to murder, not in this country, not when there's a defense of self-defense." Brown's counsel explained aiding and abetting to the jury, and

argued Brown had not aided and abetted the murder. Brown's counsel highlighted Nero's testimony and the video evidence that he contended showed Brown attempting to stop Nero's fight with Yates.

The trial court instructed the jury on first and second degree murder, second degree implied malice murder, manslaughter and voluntary manslaughter, direct aider and abettor liability, and the definitions of principals, among other instructions. The jury was also instructed on the specific intent required for first degree murder, second degree murder, and voluntary manslaughter, and on provocation that reduces an unlawful killing from murder to manslaughter. The court further instructed the jury on express and implied malice. (CALJIC Nos. 8.10 [defining murder as an unlawful killing with malice aforethought], 8.11 [defining express and implied malice], 8.30 [defining second degree express malice murder without deliberation and premeditation], 8.31 [defining second degree implied malice murder].)

The jury also heard various self-defense instructions. Two were generally worded, such that they could have pertained to either Nero or Brown. (CALJIC Nos. 5.10 [resisting attempt to commit felony], 5.12 [justifiable homicide in self-defense].) However, several were specifically tailored to the defense's theory that Nero acted in self-defense of himself and Brown.

For example, the jury was instructed: "Homicide is justifiable and not unlawful when committed by any person in defense of himself or another. In this case, Miss Brown, the defendant Nero's sister, if he actually and reasonably believed that the individual killed intended to commit a forcible and atrocious crime . . . ." CALJIC No. 5.32, regarding use of force in

6

defense of another, stated, as given: "It is lawful for a person who, as a reasonable person, has grounds for believing and does believe that bodily injury is about to be inflicted upon another, in this case, defendant Brown, to protect that individual from attack. [¶] In doing so, he may use all force and means which that person believes to be reasonably necessary and which would appear to a reasonable person, in the same or similar circumstances, to be necessary to prevent the injury which appears to be imminent."

In addition, the jury was instructed only as to Nero: "It is alleged in count 1 that in the commission of the felony charged, the defendant Nero personally used a dangerous or deadly weapon. [¶] If you find defendant Nero guilty of the crime thus charged or a lesser included felony crime, you must determine whether the defendant Nero personally used a deadly weapon in the commission of that crime."

The court did not instruct the jury on felony murder or the natural and probable consequences doctrine.

During deliberations, the jury asked the court: "If [B]rown is an 'aide&abet' [*sic*] must she rec[ei]ve [the] same level of guilt (or innocence) as Mr. Nero? Can she rec[ei]ve a higher or lesser degree of murder, manslaughter, or innocence?" In response, the trial court repeated CALJIC No. 3.00: "Each principal, regardless of the extent or manner of participation, is equally guilty. [¶] Principals include, one, those who directly and actively commit or attempt to commit the act constituting the crime, two, those who aid and abet in the commission or attempted commission of the crime."

The jury convicted Nero guilty of second degree murder (§ 187, subd. (a)), and found true the allegation that he personally

7

used a dangerous and deadly weapon, a knife, in the commission of the offense (§ 12022, subd. (b)). The jury also found Brown guilty of second degree murder. The trial court sentenced Nero to a term of 16 years to life. A different panel of this court affirmed Nero's conviction on direct appeal, but reversed the conviction as to Brown.[3]

### *Resentencing Proceedings*

In 2022, Nero filed a form petition for resentencing under section 1172.6. He checked boxes on the form indicating that he was convicted of murder under a now invalid theory and he could not be convicted presently due to changes to sections 188 and 189. The trial court appointed counsel. The People opposed the petition, arguing Nero was ineligible for relief because he was the actual killer. The People's opposition attached the opinion from Nero's direct appeal.

The trial court denied the petition. The court found Nero was ineligible for relief as a matter of law as the actual killer. In reaching this conclusion, the trial court cited the opinion from Nero's direct appeal, which described Nero's testimony admitting

---

[3] The opinion in the direct appeal explained, "During deliberations, the jury asked if they could find Brown, the aider and abettor, guilty of a greater or a lesser homicide-related offense than Nero, the direct perpetrator. They were told that principals in a crime are equally guilty. The jury then found Nero and Brown equally guilty of second degree murder. In the published portion of this opinion, we hold that the instruction was prejudicial error, and the judgment as to Brown must therefore be reversed. In the unpublished portion of this opinion, we affirm the judgment as to Nero." (*Nero*, *supra*, 181 Cal.App.4th at p. 507.)

he was the actual killer, and the jury's verdict finding he personally used a knife in the commission of the offense.

Nero timely appealed.

## DISCUSSION

**I.    Senate Bill Nos. 1437 and 775 and Section 1172.6**

Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill No. 1437) (Stats. 2018, ch. 1015) eliminated the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder and limited the scope of the felony murder rule. (*People v. Strong* (2022) 13 Cal.5th 698, 707–708; *Lewis*, *supra*, 11 Cal.5th at p. 957.)  The bill amended section 188, requiring that to be convicted of murder, "a principal in a crime shall act with malice aforethought.  Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).)  The bill also amended section 189, subdivision (e) so that a person may now be convicted of felony murder only if he or she (1) was the actual killer; (2) was not the actual killer but, with the intent to kill, aided and abetted the actual killer in committing first degree murder; or (3) "was a major participant in the underlying felony and acted with reckless indifference to human life."

However, a principal in a murder, even as an aider and abettor, may still be criminally liable if he or she personally possesses malice aforethought, whether express or implied. (*People v. Silva* (2023) 87 Cal.App.5th 632, 639–640; *People v. Offley* (2020) 48 Cal.App.5th 588, 595–596 [Sen. Bill No. 1437 did not "alter the law regarding the criminal liability of direct aiders and abettors of murder because such persons necessarily 'know and share the murderous intent of the actual perpetrator' "].)

9

Senate Bill No. 1437 also created "a procedural mechanism for those previously convicted of murder under a theory amended in [Senate Bill No. 1437] to petition for resentencing." (*People v. Emanuel* (2025) 17 Cal.5th 867, 880 (*Emanuel*); see also *Lewis*, *supra*, 11 Cal.5th at p. 959.) "The process begins with the filing of a petition that declares, among other things, that '[t]he petitioner could not presently be convicted of murder . . . because of changes to Section 188 or 189 made effective January 1, 2019,' the effective date of Senate Bill No. 1437. (§ 1172.6, subd. (a)(3); see *id.*, subd. (b)(1)(A).)" (*Emanuel*, at p. 880.) Senate Bill No. 775 (2021–2022 Reg. Sess.) subsequently extended resentencing relief to any person convicted of murder based on any "other theory under which malice is imputed to a person based solely on that person's participation in a crime . . . ." (§ 1172.6, subd. (a).)

## II.     Prima Facie Stage and Standard of Review

At the prima facie stage, " ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved." ' " (*Lewis*, *supra*, 11 Cal.5th at p. 971.) A court may not reject the petitioner's allegations " 'on credibility grounds' " or engage in " 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Id.* at pp. 971, 972.)

"If the trial court determines that the petitioner has made a prima facie case for relief, it 'shall issue an order to show cause.' (§ 1172.6, subd. (c).)" (*Emanuel*, *supra*, 17 Cal.5th at p. 880.) However, " 'If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial

10

court may dismiss the petition.' [Citation.]" (*People v. Antonelli* (2025) 17 Cal.5th 719, 724 (*Antonelli*).)

As our high court has "repeatedly said, '[t]he record of conviction will necessarily inform the trial court's prima facie inquiry . . . , allowing the court to distinguish petitions with potential merit from those that are clearly meritless.' [Citations.]" (*Antonelli*, *supra*, 17 Cal.5th at p. 731.) "We independently review the trial court's determination that the petitioner failed to make a prima facie showing for relief." (*People v. Ramos* (2024) 103 Cal.App.5th 460, 465.)

III. **Any Error In Denying Nero's Petition Was Harmless Because the Record of Conviction Conclusively Establishes He Is Not Eligible for Relief as a Matter of Law**

Nero contends the trial court denied his petition based on an "improper review of the record."[4] He further argues that the jury instructions under CALJIC Nos. 3.01 and 8.31 were ambiguous and permitted the jury to impute malice. We conclude that any trial court error was harmless because the record of conviction conclusively refutes the allegation in his petition that he is eligible for resentencing.

---

[4]    We do not address Nero's arguments that the trial court erred by relying on the summary of facts in the opinion on direct appeal, and by allegedly misunderstanding that he acted with an accomplice. Our de novo review indicates the record of conviction conclusively establishes Nero is ineligible for relief under section 1172.6 as a matter of law, and any error was therefore harmless. (Cf. *People v. Mejorado* (2022) 73 Cal.App.5th 562, 572.) We may affirm the trial court order if it is correct on any ground. (*People v. Turner* (2020) 10 Cal.5th 786, 807.)

11

### A. The charges, closing arguments, jury instructions, and verdicts show that the jury did not impute malice to Nero as an aider and abettor

The jury was never instructed on the natural and probable consequences doctrine or the felony-murder doctrine. Thus, Nero is eligible for resentencing under section 1172.6 only if he was convicted pursuant to a theory under which malice was imputed to him based solely on his participation in a crime. (§ 1172.6, subd. (a).) The record of conviction establishes that no such theory was available to or presented to the jury.

At trial, the theory of all counsel—the prosecution and both defense counsel—was that Nero was the direct perpetrator and, if involved at all, Brown was an aider and abettor. No evidence was offered to support a conclusion that anyone other than Nero stabbed Yates and killed him. Nero testified that he stabbed Yates. His theory, as argued by counsel, was that he committed the killing in self-defense, or in defense of Brown. (*People v. Vang* (2022) 82 Cal.App.5th 64, 86 [actual killer is "the person who 'personally' commits the homicidal act"].) The People charged only Nero, not Brown, with using a knife, and the jury found Nero personally used a knife in the commission of the second degree murder. The prosecutor's closing argument did not state or suggest that anyone other than Nero was the perpetrator who stabbed Yates.

While whether Nero's killing of Yates was justified was disputed at trial, that he committed the deadly stabbing was not. Further, the charges, verdicts, closing arguments, and jury instructions establish that the jury convicted Nero as the direct perpetrator who stabbed Yates to death. Nero's form

12

resentencing petition and his reply to the People's opposition asserted only conclusory allegations that he was entitled to relief under section 1172.6.  With respect to whether Nero was the person who actually killed Yates, Nero's petition identified no one else as the direct perpetrator and there was no material fact dispute on that point.  As our high court has reasoned in the plea context, "absent specific facts, no such [material fact] dispute arises . . . from mere latent, speculative possibilities; that is, a hypothetical alternate direct perpetrator cannot be conjured from thin air or a legal conclusion." (*Patton*, *supra*, 17 Cal.5th at p. 567.)

Because he was convicted as the direct perpetrator, Nero has no basis to argue he was convicted under a theory in which the jury imputed malice to him based solely on his participation in a crime.  As noted above, the jury was not instructed on felony murder, or any other theory that would have permitted the jury to find Nero guilty of murder while simultaneously concluding that, although he stabbed Yates to death, he did not personally harbor either express or implied malice.

**B.    Even if the jury somehow convicted Nero as an aider and abettor, the record conclusively establishes that it did not impute malice to him**

While the jury was instructed on aiding and abetting liability, the charges and closing arguments made clear that this theory of guilt pertained to Brown only.  However, even assuming the jury somehow could have convicted Nero as an aider and abettor instead of as the direct perpetrator, we disagree that it could have found him guilty of murder by imputing malice to him.

13

The version of CALJIC No. 3.01 given to the jury required it to find the aider and abettor "by act or advice" aided, abetted, promoted, encouraged, or instigated the commission of the crime "with knowledge of the unlawful purpose of the perpetrator" and "with the intent or purpose of committing or encouraging or facilitating the commission of the crime." When the aiding and abetting instruction given to a jury includes such language, the jury may find a defendant guilty under this theory only if it finds the aider and abettor shares the perpetrator's specific intent. (*People v. McCoy* (2001) 25 Cal.4th 1111, 1118 (*McCoy*) [the aider and abettor shares the specific intent of the perpetrator " 'when the accomplice "knows the full extent of the perpetrator's criminal purpose and gives aid or encouragement with the intent or purpose of facilitating the perpetrator's commission of the crime" ' "].)[5] Thus, Nero would have had to share Brown's murderous intent even if the jury convicted him, not her, as an aider and abettor.

Nero contends that the combination of two jury instructions, CALJIC No. 3.01 and CALJIC No. 8.31, created an ambiguity which allowed the jury to impute malice. We disagree.

In addition to CALJIC No, 3.01, the trial court instructed the jury with CALJIC No. 8.31, which, as given stated: "Murder

---

[5]     *McCoy* made "clear . . . that 'when guilt does not depend on the natural and probable consequences doctrine, . . . the aider and abettor must know and share the murderous intent of the actual perpetrator.' [Citation.]" (*People v. Flores* (2023) 96 Cal.App.5th 1164, 1173, fn. 4; see *Antonelli, supra,* 17 Cal.5th at p. 731 ["we agree with the Attorney General that 'the [section 1172.6] eligibility question will turn on an examination of both the governing law at the time of trial and the record of conviction, including the jury instructions' "].)

14

of the second degree is also the unlawful killing of a human being when, [¶] one, the killing resulted from an intentional act; [¶] two, the natural consequences of the act are dangerous to human life, and; [¶] three, the act was deliberately performed with the knowledge of the danger to and with conscious disregard for life. [¶] When the killing is the direct result of such an act, it is not necessary to prove that the defendant intended that the act would result in the death of a human being."

Nero relies on *People v. Langi* (2022) 73 Cal.App.5th 972 (*Langi*) for his assertion of ambiguity. In *Langi*, the defendant was one of four people to assault a victim during a robbery. (*Id.* at pp. 975–976.) The victim died after falling during the assault and hitting his head. (*Id.* at p. 975.) The court instructed the jury on first degree felony murder and direct aiding and abetting, and the jury ultimately convicted Langi of second degree murder. (*Id.* at p. 977.) The trial court denied Langi's petition for resentencing at the prima facie stage. (*Ibid.*) However, the Court of Appeal reversed, concluding the jury could have convicted Langi as an aider and abettor, and CALJIC No. 3.01 did not adequately explain that to be convicted of aiding and abetting second degree implied malice murder, Langi had to "have acted with the mental state of implied malice." (*Langi*, at p. 983.) The *Langi* court noted that CALJIC No. 8.31 provided that although the jury must find the killing resulted from an intentional act, it was " 'not necessary to prove that the defendant intended that the act would result in the death of a human being.' " (*Langi*, at p. 981.) The *Langi* court thus observed that while the perpetrator of the killing must have deliberately performed the fatal act, his or her "purpose," the term used in CALJIC No. 3.01, "may have been only to strike or

15

to injure, or conceivably only to embarrass, the victim. Since the perpetrator's purpose need not have been to kill the victim, the aider and abettor's knowledge of that purpose similarly need not have been knowledge that the perpetrator aimed to kill. If the perpetrator need not have had 'murderous intent,' certainly the aider and abettor need not have had such an intent." (*Langi*, at pp. 982–983.)[6]

*Langi* is materially different from this case. In *Langi*, the defendant was charged with and found guilty of robbery and battery, in addition to murder. (*Langi*, *supra*, 73 Cal.App.5th at p. 976.) The only crime charged in this case was murder. The jury was instructed that murder required either intent to kill or implied malice (based on conscious disregard). The only possible "unlawful purpose" at issue here was an unlawful killing, and "one cannot knowingly and intentionally help another commit an unlawful killing without acting with malice." (*McCoy*, *supra*, 25 Cal.4th at p. 1123.)

Moreover, in our view, when considered in the context of the rest of the instruction, CALJIC No. 3.01's reference to "purpose" can only mean the direct perpetrator's unlawful intent. As noted above, CALJIC No. 3.01 instructs that a person aids and abets the commission of a crime when, with knowledge of the perpetrator's "unlawful purpose," and with "the intent or purpose of committing or encouraging or facilitating" the commission of

---

[6] Nero also cites *People v. Powell* (2021) 63 Cal.App.5th 689, 714, in which the court viewed the aiding-and-abetting instruction, which was identical in relevant part to the aiding-and-abetting instruction in *Langi* and given here, as inadequate as applied to the crime of second degree murder because it did not clarify that an accomplice must personally harbor the mental state of implied malice. (*Powell*, at p. 714.)

16

the crime, by "act or advice aids, promotes, encourages or instigates the commission of the crime." The instruction's second use of "purpose" is as a synonym for intent. We see no basis to conclude that, in the first use of "purpose," the word would have a meaning other than as a synonym for intent. The unlawful purpose the aider and abettor was required to share here was the direct perpetrator's unlawful intent, defined in this case as either an intent to kill, or committing an act with the knowledge that it was dangerous to human life and with conscious disregard of that danger. Since no other crimes were charged, there was no ambiguity and no opportunity for the jury to determine the shared unlawful purpose was anything other than an intent to kill or implied malice.

Thus, the record of conviction conclusively establishes that Nero was not convicted based on a now invalid theory. He is ineligible for relief as a matter of law.

## DISPOSITION

The trial court's order denying Nero's petition for resentencing is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ADAMS, J.

We concur:


EDMON, P. J.



EGERTON, J.